## In re THE CLOROX COMPANY SECURITIES LITIGATION

No. C 99–4471 SC.

United States District Court, N.D. California.

Nov. 21, 2002.

William S. Lerach, Milberg Weiss Bershad Hynes & Lerach, LLP, San Diego, CA, Patrick J. Coughlin, Kimberly C. Ep-

stein, Christopher P. Seefer, Milberg Weiss Bershad Hynes & Lerach, LLP, San Francisco, CA, Plaintiffs.

Melvin R. Goldman, Jordan Eth, Dorothy L. Fernandez, Megan M. Auchincloss, Morrison & Foerster, LLP, San Francisco, CA, for Defendants.

*CORRECTED ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS*

CONTI, District Judge.

## I. *INTRODUCTION*

The above captioned action is a consolidated putative class action securities law suit. A variety of plaintiffs (collectively "Plaintiffs" or the "Class") filed actions on behalf of all persons who purchased the common stock of the Clorox Company ("Clorox") between October 19, 1998 and August 11, 1999 alleging violations of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act (the "PSLRA"). 15 U.S.C. § 78u–4 (1996). Defendants now have moved for partial summary judgment and summary judgment on the pleadings. For the following reasons, Defendants' motion is granted.

## II. *BACKGROUND*

This Court's previous orders provide a thorough discussion of the facts and issues in this case, and here a briefer summary will suffice. This case arises out of Clorox's purchase of First Brands Company. Following the acquisition, Clorox experienced difficulty integrating First Brands. The difficulty resulted in large part from several of First Brands' business practices. In particular, First Brands often would accompany sales with promises of future rebates or other promotions, recording the earnings but deferring acknowledgment of costs. Honoring First Brands' commit-

ments and dealing with the aftereffects of these practices caused a decline in Clorox's earnings, and in 1999, when Clorox announced the decline, its stock plummeted.

Plaintiffs allege that Clorox made a series of misrepresentations regarding the merger, optimistically projecting short term success even as it realized it was facing difficulty, and understating the extent of problems resulting from First Brands' practices. These alleged statements formed the basis for each of Plaintiffs' complaints.

On November 7, 2000, the Court granted Defendants' motion to dismiss Plaintiffs' First Amended Complaint ("FAC") without prejudice. On December 20, 2000, Plaintiffs filed a Second Amended Complaint ("SAC"), which was dismissed without prejudice by the Court's order of June 13, 2001 ("Second Dismissal"). Plaintiffs filed the present Third Amended Complaint ("TAC") on August 31, 2001.

Although it concluded that the vast majority of the TAC suffered from the same infirmities as its predecessors, the Court denied Defendants' motion to dismiss this third complaint. The Court found that Plaintiffs had stated a claim based on two allegations. First, Plaintiffs alleged that, at a March 4, 1999, meeting with representatives from Merrill Lynch, Defendants misrepresented the amount of time they believed they would need to clear out First Brands' excess inventory and reported that First Brands' business was on track for growth "going forward." Second, Plaintiffs alleged that on an April 22, 1999, conference call Defendants again made similar misrepresentations regarding the temporary nature of the inventory problem and First Brands' overall health. The Court found that these alleged statements, in combination with allegations elsewhere in the complaint that Clorox was well aware that at least some of First Brands'

promotional obligations would take eighteen to twenty-four months to work through and that Clorox was in a "near panic" about this inventory problem, created a sufficient inference of fraud to meet the Exchange Act's heightened pleading standard.[1] The Court declined, in the context of a 12(b)(6) motion, to dismiss the complaint in part and retain it in part, and instead denied the motion to dismiss in its entirety.

Following this denial, Plaintiffs served extensive discovery requests upon Defendants. According to Plaintiffs, Defendants have been recalcitrant in complying with those requests, insisting that the only proper subjects of discovery are the materials surrounding the March 4 and April 22, 1999 statements, and producing only limited documents regarding those meetings. Defendants, however, assert that they have provided all relevant materials pertaining to those meetings, that materials pertaining to other statements are not properly subject to discovery, and that the materials they have produced clearly establish that the alleged statements never were made. Accordingly, Defendants argue that no evidence exists to support an essential element of Plaintiffs' fraud charges and that those charges must be dismissed.

In the alternative, Defendants argue that such statements, if they were made, were forward-looking and accompanied by meaningful cautions of uncertainty. Accordingly, Defendants urge that both the PSLRA's Safe Harbor Provision and the judicially-created "bespeaks caution" doctrine prevent either alleged statement from being the basis of a successful securities fraud claim.

In addition to moving for summary judgment on the claims based on the statements at the conference and conference call, Defendants have moved for judgment on the pleadings on all of Plaintiffs' other allegations.

## III. LEGAL STANDARD

### A. Summary Judgment and Judgment on the Pleadings

Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. Proc. 56(c); *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir.1994). Once a summary judgment motion is made and properly supported, the nonmoving party may not rest on mere allegations, but must set forth specific facts showing that there is a genuine issue for trial. Fed R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

1. These paragraphs from the Third Amended Complaint alleged several other false statements, claiming that Clorox perpetrated additional fraud through its optimistic evaluations of its own business strength and growth potential. This Court did not find that those statements provided a potential basis for a fraud claim.

   The complaint also alleges that Clorox made false statements on several other occa-

sions in the Spring of 1999. The Court expressly found, however, only that the March conference and April conference call statements provided a basis for a claim. The remaining statements are alleged only vaguely, with Plaintiffs apparently inferring from the content of analysts' reports the substance of Clorox's statements to those analysts, and did not provide the basis for a claim.

If the party lacks evidence sufficient to oppose this motion, it may request, pursuant to Rule 56(f), that the court stay the motion pending further discovery. The party must submit "(a) a timely application which (b) specifically identifies (c) relevant information (d) where there is some basis for believing that the information sought actually exists." *VISA Int'l Serv. Assoc. v. Bankcard Holders of America,* 784 F.2d 1472, 1475; *Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1991); Fed. Rule Civ. Proc. 56(f). Thus, to successfully obtain a summary judgment motion in the face of a request for a Rule 56(f) continuance, the moving party must demonstrate that no current factual dispute exists and the non-moving party must fail to demonstrate the possible existence of relevant undiscovered material.

Judgment on the pleadings under Rule 12(c) is appropriate "when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Heliotrope General, Inc. v. Ford Motor Co.,* 189 F.3d 971, 979 (9th Cir.1999). In *Heliotrope,* the 9th Circuit held that judgment on the pleadings was appropriate when a plaintiff's complaint failed to meet the pleading standards established by the PSLRA. *Id.* at 978–79.

B. The Exchange Act and Exchange Commission Rule 10b–5

Plaintiffs contend that Defendants violated Section 10(b) of the Exchange Act and Exchange Commission Rule 10(b)–5. In order to show violations of either the act or the rule, Plaintiffs must show that Defendants made the statements upon which the allegations of misrepresentation are based.

Section 10(b) specifically states that it shall be unlawful "to use or employ in connection with the purchase or sale of any security... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe." 15 U.S.C. § 78j(b). Exchange Commission Rule 10b–5 makes it unlawful for any person to use interstate commerce to make an untrue statement or otherwise perpetrate a fraud in connection with the sale of a security. Both § 10(b) and Rule 10b–5 thus require a statement or communicative act, and Plaintiffs must show that the alleged statements actually were made.

C. Safe Harbor Provision and "Bespeaks Caution" Doctrine

Both the PSLRA and judge-made doctrine establish limitations on the potential liability of companies and individuals for forward looking statements. Under the Safe Harbor provision of the PSLRA, a company may not be liable for forward looking statements if they are identified as such and accompanied by specific, meaningful cautions. 15 U.S.C. 78u–5(c). If the forward-looking statement is made orally, the cautions contained in a written document may be incorporated by reference. *Id.* § 78u–5(c)(2); H.R. Conf. Rep. 104–369, 45 (1995). The cautionary statements must, within context, be meaningful; boilerplate, generalized warnings do not suffice to balance specific predictions. 15 U.S.C. § 78u–5(c)(1)(A)(i); *see also In re Worlds of Wonder Securities Litigation,* 35 F.3d 1407, 1414 (9th Cir.1994) (establishing a similar requirement under the "bespeaks caution" doctrine).

The Safe Harbor provision provides a statutory extension of the judicially-created "bespeaks caution" doctrine. H.R. Conf.. Rep. 104–369 at 43; *see In re Stac Electronics Securities Litigation,* 89 F.3d 1399, 1408 (9th Cir.1996). These doctrines are intended to create common-sense limitations on plaintiffs' ability to assert materiality and reliance in securities fraud actions. *Stac,* 89 F.3d at 1408

("the 'bespeaks caution' doctrine reflects the unremarkable proposition that statements must be analyzed in context") (quoting *Worlds of Wonder*, 35 F.3d at 1414). They prevent a plaintiff from bringing a fraud claim based on a prediction when the circumstances under which that prediction was made ought to have cautioned against reliance. Because the doctrines relate to materiality and reliance, not scienter, the state of mind of the speaker need not be assessed in determining the doctrines' applicability.[2]

## IV. DISCUSSION

### A. Scope of Discovery

■ Defendants have contended that the only proper subjects of discovery are the two specific statements upon which this Court based its refusal to dismiss Plaintiffs' case. Plaintiffs contend that since the Court did not grant a partial dismissal all allegations in the complaint are proper subjects of discovery. Plaintiffs' contention defies the purposes of the Securities Litigation Reform Act, and the Court holds that only those two statements were proper subjects of discovery.

The PSLRA was enacted in part to curb abusive discovery. *See* H.R. Conf. Rep. 104–369 at 32–33, 37. Congress concluded that Plaintiffs were using the threat of extensive discovery to force settlements on meritless claims, and sought to create a higher pleading bar in order to protect companies from the threat of pointless, expensive discovery. *Id.* at 37. This purpose would be entirely thwarted if a plaintiff could obtain discovery on a litany of meritless assertions simply by attaching them to one narrow colorable allegation.

This Court did not dismiss any portion of Plaintiffs' TAC. Nevertheless, it un-

equivocally held that only two allegations provided any basis for a colorable claim. Plaintiffs earned the right to proceed with discovery on those statements, but did not earn the right to proceed on all the other twice-dismissed allegations contained in the TAC.

### B. Sufficiency of Evidence Currently Before the Court

■ Plaintiffs allege that Clorox made misrepresentations regarding its expectations for First Brands at the March 4, 1999, Conference and at the April 22, 1999 conference call.

#### 1. The March 4, 1999 Conference

The Court found that two of Plaintiffs' allegations regarding the March 4 Conference provided the basis for a colorable claim. First, Plaintiffs allege that Clorox President Gerald Johnston stated that the inventory problem was minor and temporary or transitory in nature. Second, according to Plaintiffs, he said that First Brands' business was healthy and would be growing.

In response to these allegations, Defendants have submitted a declaration from Johnston that he made no such statements in his talk or in followup conversations, powerpoint slides from the presentation, and the script, including handwritten notes, from which Johnston spoke at the conference. Although the script conveys generalized optimism about the First Brands acquisition, it contains no specific statement about the timetable for resolving the inventory problem or about Clorox's expectations of immediate First Brands' growth. Johnston appears to have been quite sanguine about the long-

---

**2.** A second prong of the PSLRA's Safe Harbor provision does require that a plaintiff prove scienter. A defendant need not show an absence of scienter, however, for the Safe Har-

bor provision to require dismissal or summary judgment. *See* 15 U.S.C. § 78u–5(c)(1)(B).

term benefits of the merger, but such optimism is not inconsistent with plaintiffs' allegation that Clorox had doubts about First Brands' short term health.

Plaintiffs have offered no evidence that Johnston said anything of relevance at the conference that was not contained in the script. They do cite a Merrill Lynch report issued on March 4, 1999, following the conference. The report contains statements that the impact of First Brands' inventories would extend into fiscal year 2000. Although this statement does suggest that Clorox might have conveyed that the problem would be of limited temporal duration, the timetable provided is entirely consistent with the information Plaintiffs allege Clorox was concealing. Nothing else in the report suggests that Johnston made any of the representations alleged by Plaintiffs.

Thus, Plaintiffs currently have produced no evidence to support their allegations, and Defendants have offered strong evidence to rebut Plaintiffs' contentions.

### 2. The April 22, 1999 Conference Call

Plaintiffs allege that Clorox materially misrepresented First Brands' health during this conference call, stating that the inventory problems were "temporary and transitory" and not reflective of deeper problems. The Court found this alleged statement to be the proper basis of a claim when combined with allegations that Clorox knew the excess inventory was reflective of deeper problems and would take, at least in some instances, 18 to 24 months to clear out.

Clorox has produced a transcript of the conference call and subsequent question-and-answer sessions, and on the basis of this transcript and the alleged speakers' declarations argues that the alleged statements never were made. The transcript partially supports this argument.

Clorox representative Karen Rose asserted that Clorox expected to see a major part of the savings from the merger by the second half of fiscal year 2000. This statement does not imply that the First Brands product line was currently healthy or expected to produce immediate growth. Indeed, most of the savings Clorox anticipated achieving were expected to arise from consolidation and from correcting First Brands' flawed business model, and the transcript unequivocally indicates Clorox's expectation that earnings would suffer while it fixed these problems.

Rose's assertions about the timetable for correcting the problems present a closer issue. She stated that clearing out the inventory would involve a "slow bleed" and would be a "year long process approximately." Rose Declaration, Exh. B at 17. The latter assertion is not quite consistent with Defendants' alleged awareness that the process could take eighteen to twenty-four months. The difference is slight; overall Rose's assessment seems consistent with what Plaintiffs allege she was concealing—that First Brands' inventory problems needed to be fixed before any profits would be realized, and that the process of fixing those problems would take time. Nevertheless, the difference between the timetable Rose predicted and what Plaintiffs' allege she knew is inconsistent with Defendants' assertion that the statements in question never were made.

### 3. Reaching the Market

Defendants argue that the alleged statements, if made, never reached the market. Ms. Rose's assertion of a one-year timetable is repeated almost verbatim in an analyst's report issued following the conference call, however, suggesting that the market did indeed hear this statement. Declaration of Christopher P. Seefer, Exh. 25 (Paine Webber report).

4. Safe Harbor and "Bespeaks Caution"

Defendants also assert that the statement, even if made, cannot be the basis for an action because it was forward looking and was accompanied by meaningful disclaimers. The Court agrees.

The Safe Harbor provision and "bespeaks caution" doctrines provide protection for forward-looking statements accompanied by meaningful disclaimers of uncertainty or caution. 15 U.S.C. § 78u–5(c); *Stac,* 89 F.3d at 1408.

Here, the relevant statement was forward-looking. Rose was estimating the time it would take for Clorox to clear out the excess inventory. Although her statement was based on existing knowledge, it was quite clearly a prediction of future events.

In addition, the comment was identified as forward-looking. Rose began the conference call by asserting that some of her statements would be forward-looking, and a prediction about future events is self-evidently a forward-looking statement.

Finally, the statement was accompanied by meaningful cautionary statements. Rose began the call by disclaiming certainty, and referred listeners to additional cautions in Clorox's June 30, 1998, Form 10K filing.[3] That filing contained additional, albeit general, statements about the potential difficulties Clorox might face and the potential problems with the merger. In addition, Rose quite clearly indicated during the call the Clorox anticipated it would be losing money on First Brands for several quarters, a statement that, while not specifically identified as a warning, ought to have sounded a note of caution with any investor. Finally, Rose accompanied her time estimate with the word "approximately," indicating that investors would be unwise to rely on an exact timetable.

These cautions provide the requisite contextual warnings for the Safe Harbor provision and "bespeaks caution" doctrines to apply. The latter caution does not specifically relate to the inventory problem, and the former statements are quite general. If Rose had then launched into an extended, detailed discussion predicting the exact manner and timing of resolution of the inventory problem, these warnings probably would be insufficient. Instead, however, she spoke only a couple of sentences and provided an approximate timetable. Her earlier disclaimers provide plenty of context for investors to be warned against strict reliance on a brief and admittedly approximate statement.

### C. Plaintiffs' Rule 56(f) Motion

If Plaintiffs can point to the possibility of meaningful further discovery, this court must stay summary judgment in spite of Plaintiffs' current lack of evidentiary support for their claim. Plaintiffs, however, have not pointed to any specific relevant information that further discovery might help them obtain.

Plaintiffs request further discovery on a host of matters unrelated to the March 4, 1999, Conference and the April 22, 1999, Conference Call. The Court has determined that such discovery is inappropriate, and Defendants' failure to respond to

---

**3.** Specifically, Rose said: "Now before I begin, I need to remind you that any forward-looking statements made on this call represent our best judgment as to what may occur in the future. The Company's actual results will depend on a number of competitive and economic factors, some of which may be outside the control of the Company. We refer you to our Form 10K filing for the year ended June 30, 1998, filed with the SEC last September, for a discussion of the most important of those factors." Rose Declaration, Exh. B., at 1.

those requests is not a basis for a stay of discovery.

Plaintiffs also have requested further discovery pertaining to what Clorox knew at the time it made the alleged statements. This motion turns solely on what statements were made, however; that threshold matter can be evaluated before Clorox's knowledge becomes relevant. Thus, Defendants' failure to produce documents relevant to its knowledge in the Spring of 1999 also provides no basis for a stay of discovery.

Finally, Plaintiffs request all documents relating to the conference and meeting. The documents already produced by Defendants document what was said at the meetings in question, however, and Plaintiffs have not identified any material that would supplement the information already provided by Johnston's speech script and the conference call transcript. Both Johnston and Rose did engage in followup conversations following their prepared remarks, but they both claim to have said nothing different in those conversations than in their earlier remarks. Despite Plaintiffs' contentions to the contrary, nothing in the analyst reports based on the conference and conference call suggests otherwise.[4] A vague suggestion that some other information might exist is insufficient to overcome Defendants' insistence that they already have produced the relevant documents, especially when those documents provide strong evidence of what was actually said. Accordingly, this request also fails to provide sufficient grounds for a stay of summary judgment.

### D. Judgment on the Pleadings on the Remaining Claims

In addition to moving for summary judgment on the allegations pertaining to the March conference and April conference call statements, Defendants move for judgment on the pleadings on their remaining allegations. They argue that since the Court already has determined that those allegations fail to meet the PSLRA's pleading standards, judgment on the pleadings is now appropriate. Plaintiffs disagree, and argue that Defendants are simply revisiting arguments already rejected by the Court when it refused to dismiss the TAC.

Plaintiffs are correct that Defendants request this court to revisit the adequacy of the complaint. They are incorrect, however, that the Court rejected Defendants' arguments. In denying Defendants' motion to dismiss the TAC, the Court refused to divide the claim between colorable and non-colorable elements, and instead chose to treat the motion as a whole. It did not reject any of Defendants' arguments regarding the inadequacy of the remainder of the pleadings. Instead, it clearly concluded that, with the exception of the specific alleged March and April statements, the pleadings failed to meet the standards of the PSLRA. Now, having addressed the two allegations that provided the basis for a colorable claim, the procedural moment is right for addressing the remainder of the complaint. For the reasons stated in its three previous orders, the Court grants Defendants' motion for judgment on the remainder of the pleadings. *See Heliotrope*, 189 F.3d at 978–79. Accord-

---

**4.** In their brief, Plaintiffs cite statements in several analyst reports as evidence that Clorox had made other statements minimizing the extent of First Brands' problems. Many of the reports cited were issued prior to the April 22 conference call and were written by analysts not present at the March 4 conference. Accordingly, many of the cited reports provide no indication of what was said at the conference or on the call.

ingly, judgment will be entered in favor of Defendants.

## V.  *CONCLUSION*

For the aforementioned reasons, Defendants' Motion for Partial Summary Judgment and Motion for Judgment on the Pleadings are HEREBY GRANTED.

IT IS SO ORDERED.